UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINO HERNANDEZ,<br><br>                                    Plaintiff,<br><br>v.<br><br>DR. NATHAN WILLIAMS, et al.,<br><br>                                    Defendants. | Case No.:  21-cv-944-WQH-DDL<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. No. 61]** |

Plaintiff Lino Hernandez ("Plaintiff"), a prisoner proceeding *pro se* in this action, alleges Defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments.  *See generally* Second Amended Complaint ("SAC"), Dkt. No. 29.  Plaintiff brings this action against Dr. Nathan Williams ("Williams"), Dr. Nasir ("Nasir"), Dr. Stepke ("Stepke") and Dr. Erica Estock ("Estock") pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See generally id.*  He also requests the Court exercise supplemental jurisdiction over unspecified "state law tort claims." *See id.* at 1.  Before the Court is Defendants' Motion for Summary Judgment (the "Motion").  Dkt. No. 61.  For the reasons stated below, the undersigned **RECOMMENDS** the District Court **GRANT** Defendants' Motion as to Plaintiff's federal claims and **DISMISS** Plaintiff's state law tort claims.

# I.

## BACKGROUND

### A. Summary of Plaintiffs' Allegations

As alleged in the SAC, Plaintiff suffers from a lower back injury for which he was under the care of Williams, a physician at Calipatria State Prison ("Calipatria").[1]  Dkt. No. 29 at 1, 3.[2]  Plaintiff alleges he frequently complained to Williams about pain in his lower back that "[a]ffect[s] [his] daily activities," including his ability to sleep, walk, bend, bathe, exercise, and clean his cell.  *Id.* at 3.  Plaintiff further alleges Williams "fail[ed] to treat and diagnose" his back pain, because Williams did not order additional testing or imaging nor refer Plaintiff to specialists, but instead only increased Plaintiff's pain medication, which was not effective.[3]  *See id.* at 3-4.  Plaintiff asserts Williams "acted with deliberate indifference." *Id.* at 3.

---

[1]    Plaintiff was incarcerated at Calipatria from August 14, 2019 until July 6, 2021, when he was transferred to California State Prison, Los Angeles County in Lancaster, California.  *See* Dkt. No. 61-4 at 11, 43.  He remains in custody in Lancaster as of the date of this Report and Recommendation. *See* Cal. Dep't of Corr. and Rehab., *Public Inmate Locator System*, https://inmatelocator.cdcr.ca.gov/Details.aspx?ID=AF8851 (last accessed July 17, 2023).

[2]    All page citations are to the page numbers generated by the CM/ECF System.

[3]    Attached to Plaintiff's initial complaint is a CDCR 602 Health Care Grievance against Williams signed by Plaintiff on September 13, 2020 (the "Form 602"), in which he complained his back injury was "not going to fix itself" and that Williams was not doing enough to alleviate his pain.  Dkt. No. 1 at 17.  Estock interviewed Plaintiff regarding this grievance, and Stepke and Nasir signed the Institutional Level Response, finding Williams had not violated any CDCR policy.  Dkt. No. 61-10 at 3.  Plaintiff replied to the institution's response on the same Form 602 on January 10, 2021, in which he complained Williams, Nasir, Estock, and Stepke were "doing nothing to help [him] with his back" and were "not upholding their oath as doctors to help their patient."  *See* Dkt. No. 1 at 16.  The Form 602 is not attached to the operative complaint nor to the Motion. The Court describes it here solely as context for Plaintiff's allegations against Stepke, Estock and Nasir.  The January 4, 2021 Institutional Level Response is attached to the Declaration of M. Nasir, M.D. in

Plaintiff's claims against the other Defendants arise out of his dissatisfaction with Williams' care and treatment of him. He alleges Nasir, the Chief Medical Executive at Calipatria, "ignored [Plaintiff's] complaint about Dr. Williams" and his "plea for help" (referring to the Form 602) and "just stated Dr. Williams did no wrong." Dkt. No. 29 at 5. Plaintiff further alleges Nasir "could [have] reviewed [Plaintiff's] file" and ordered tests, MRIs, referrals to a chiropractor or a change in medication, but instead Nasir "failed to provide Plaintiff medical care." *Id.* Plaintiff similarly alleges Estock, with whom he discussed his Form 602, "could have" done more to help him, but she failed to "put together" a treatment plan and "passed his [grievance] on to [] Nasir" who determined Williams "did not violate CDCR policy." *Id.* at 6. Plaintiff makes similar allegations against Stepke, whom he claims "could have intervened and ordered Dr. Williams to take a more profecional [*sic*] aproch [*sic*] and ordered more test[s] and try a real pain medication for my back." *Id.* at 7.

Based on the foregoing allegations, Plaintiff asserts Defendants violated his right under the Eighth Amendment to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. Dkt. No. 29 at 2. Plaintiff also "moves this Court to grant motion to have supplemental jurisdiction . . . over Plaintiffs [*sic*] state law tort claims." *Id.* at 1. Plaintiff did not, however, plead any state law tort claims in the SAC. *See generally id.* Plaintiff seeks monetary damages and injunctive relief. *Id.* at 9.

**B. Procedural History**

Plaintiff filed his original complaint against Defendants on May 17, 2021, which he subsequently amended twice. See Dkt. Nos. 1, 10, 29. After their motion for screening of the SAC (the operative complaint) was denied, Defendants answered the SAC on July 13, 2022. Dkt. Nos. 37, 39, 42. Discovery ensued pursuant to the Court's July 14, 2022 Scheduling Order. Dkt. No. 43.

---

Support of Defendants' Motion for Summary Judgment ("Nasir Decl."), Dkt. No. 61-9, and was authenticated by him. *See id.*, at ¶ 3.

1    Defendants filed the instant Motion on March 24, 2023.  The same day, the Court

2    issued a notice pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand*

3    *v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), advising Plaintiff of his obligations in

4    opposing the Motion and setting a briefing schedule.  *See* Dkt. No. 62.  Plaintiff's

5    opposition, if any, was due May 1, 2023.  *See id.*  On May 22, 2023, Defendants filed a

6    "Notice of No Opposition," identifying that Plaintiff had not filed an opposition to their

7    Motion.  Dkt. No. 63.  As of the date of this Report and Recommendation, the Court has

8    not received any response to the Motion from Plaintiff.

9                                              **II.**

10                                   **LEGAL STANDARDS**

11           Federal Rule of Civil Procedure 56(a) provides that a court "shall grant summary

12    judgment if the movant shows that there is no genuine dispute as to any material fact and

13    the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "moving

14    party initially bears the burden of proving the absence of a genuine issue of material fact."

15    *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).[4]  "Where the moving

16    party meets that burden, the burden then shifts to the non-moving party to designate

17    specific facts demonstrating the existence of genuine issues for trial." *Id*.  This task "is not

18    a light one." *Id*.  The non-moving party cannot rely on his pleadings, but "must come forth

19    with evidence from which a jury could reasonably render a verdict [for] [him], assuming

20    that all justifiable inferences are drawn in [his] favor." *Pac. Gulf Shipping Co. v. Vigorous*

21    *Shipping & Trading S.A.*, 992 F.3d 893, 898 (9th Cir. 2021).

22    / / /

23    / / /

24    / / /

25

26

27    [4]      All citations, internal quotation marks, and subsequent history are omitted unless

28    otherwise noted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### DISCUSSION

**A. Plaintiff's Failure to Oppose the Motion**

Before turning to the merits of the Motion, the Court addresses Plaintiffs' failure to oppose it.  The record demonstrates Plaintiff was advised both by Defendants and the Court that if he did not submit his own evidence in opposition to the Motion, judgment may be entered for Defendants and his case would be dismissed without a trial.  *See* Dkt. No. 61-2 (Defendants' notice); Dkt. No. 62 (Court's notice and briefing order).  The Court further ordered that Plaintiff must either file his opposition, or, if he did not oppose the Motion, a "Notice of Non-Opposition," by May 1, 2023, *see id.*, but he did not do so.  Plaintiff also did not respond to Defendants' "Notice of No Opposition."  Dkt. No. 63.  Defendants' Motion and accompanying *Rand* notice, the Court's briefing order and notice pursuant to *Klingele/Rand*, and Defendants' "Notice of No Opposition" were all served on Plaintiff at his current place of incarceration.[5]

Because Plaintiff failed to file an opposition, there is no evidence in the record before the Court supporting his claims.  The Court further observes Plaintiff's SAC is not verified, and therefore cannot serve as the source of any material fact for trial.  *See In re Oracle Corp.*, 627 F.3d at 385 ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence.").  The Court therefore finds Plaintiff has not met his burden to "designate specific facts that would allow a reasonable fact finder to return a verdict" in his favor.  *Howell v. Advantage RN, LLC*, 401 F. Supp. 3d 1078, 1087 (S.D.

---

[5]    Based on its search of the Inmate Locator System, *supra* n.1, the Court takes judicial notice that Plaintiff is incarcerated at California State Prison, Los Angeles County in Lancaster, California, which is also the address on the Court's docket used for service of papers on Plaintiff.  *See* Fed. R. Evid. 201(b) (permitting the Court to "judicially notice a fact that is not subject to reasonable dispute" where that fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Cal. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court's inquiry does not end here, however.  As the Ninth Circuit has explained, "[u]nder Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment *only* upon a showing that there are no genuine issues of material fact requiring a trial." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (finding the district court's "discretion . . . is necessarily abused when exercised to grant a motion for summary judgment where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact") (emphasis added).  Accordingly, "[a] party's mere failure to respond, by itself, does not provide the Court with authority to grant [a] motion [for summary judgment]." *Winters v. Country Home Prods., Inc.*, 654 F. Supp. 2d 1173, 1179 (D. Mont. 2009); *see also Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019) (noting a court "ha[s] an obligation to evaluate independently the sufficiency of the moving papers") (citing *Cristobal v. Siegel,* 26 F.3d 1488, 1495 (9th Cir. 1994)). "Nonetheless, a court can grant an unopposed summary judgment motion if the movant's papers do not reveal a genuine issue of material fact, and are themselves sufficient to warrant summary judgment." *Winters*, 654 F. Supp. 2d at 1179.  The Court therefore turns to the sufficiency of Defendants' moving papers.

**B. Fourteenth Amendment Claims**

In the SAC, Plaintiff accuses each Defendant of a "Fourteenth Amend[ment] violation of due process."  Dkt. No. 29 at 2.  The facts Plaintiff alleges in support of his Fourteenth Amendment claims are the same as those supporting his Eighth Amendment claims, and he does not delineate between the two.  *See generally id.*   In the Motion, Defendants argue Plaintiff has improperly "double[d] up" his constitutional claims and that his Fourteenth Amendment claims "fail[] as a matter of law."[6]  Dkt. No. 61 at 18.

_____

[6]     As Defendants note, the Court determined in its September 22, 2021 Order that "Plaintiff's Eighth Amendment allegations against Defendants [were] sufficient to survive

The Court agrees. Noting that "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights where elsewhere conferred," the Supreme Court has directed district courts in Section 1983 cases to "identify [the] specific constitutional right allegedly infringed" and assess the merits of the claims "by the specific constitutional standard which governs" those rights, rather than by a nonspecific due process standard. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). As the Supreme Court explained in a later decision, the "more specific provision" rule in "*Graham* . . . requires that if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *U.S. v. Lanier*, 520 U.S. 259, 272 (1997)). Here, Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs is "covered by" the Eighth Amendment. *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (noting an inmate's post-conviction claims for deliberate indifference to serious medical needs are properly brought "under the Eighth Amendment's Cruel and Unusual Punishment Clause"). Accordingly, a "substantive due process analysis" of this claim under the Fourteenth Amendment is "inappropriate." *Cnty. of Sacramento*, 523 U.S. at 843.

Based on the foregoing precedent, the Court finds Defendants' moving papers are sufficient to demonstrate their entitlement to judgment in their favor, and **RECOMMENDS** the District Court **GRANT** the Motion, as to Plaintiff's Fourteenth Amendment claims.

---

the 'low threshold' set for *sua sponte* screening pursuant to 28 U.S.C. Section 1915(e)." Dkt. No. 16. No similar determination was made regarding Plaintiff's Fourteenth Amendment claims, and the Court agrees the Fourteenth Amendment claims did not "survive[]" the Court's initial screening. Dkt. No. 61 at 18. Nevertheless, because Plaintiff re-pled his Fourteenth Amendment claims in the SAC, the Court treats that claim as viable for purposes of this Report and Recommendation.

C. <u>**Eighth Amendment Claims**</u>

In support of summary judgment, Defendants argue the undisputed facts show Defendants were not deliberately indifferent to Plaintiff's serious medical needs, and therefore did not violate his rights under the Eighth Amendment. Dkt. No. 61 at 19-22. Alternatively, Defendants assert that even if Plaintiffs' Eighth Amendment claims are proven, Defendants are entitled to qualified immunity from liability. *Id.* at 22-23.

1. <u>Legal Standard</u>

A claim for deliberate indifference to a serious medical need, as Plaintiff asserts here, involves a two-part inquiry: "[f]irst, the plaintiff must show a serious medical need," meaning that "failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Second, the plaintiff must show that the defendant's response to the need was deliberately indifferent." *Id*. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Only conduct that "constitutes unnecessary and wanton infliction of pain" rises to the level of a constitutional violation." *Id.* "This is not an easy test for [p]laintiffs to satisfy," *id.* at 745, as it requires "a *conscious* disregard of a serious risk of harm." *Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) (emphasis in original). Facts that demonstrate malpractice, inadequate treatment, or even gross negligence are insufficient to establish an Eighth Amendment violation. *See id*. at 1059-60.

2. <u>Defendants' Evidence</u>

a. *Williams*

Williams is a physician employed by CDCR at Calipatria State Prison. Declaration of N. Williams, M.D., in Support of Defendants' Motion for Summary Judgment ("Williams Decl."), Dkt. No. 61-5, at ¶¶ 1, 3. Williams acted as Plaintiff's primary care

/ / /

/ / /

physician while Plaintiff was incarcerated at Calipatria. *Id.,* at ¶ 3. Based on his review of Plaintiff's medical records[7] and his personal recollection, Williams avers as follows:

Plaintiff's transfer paperwork from North Kern State Prison to Calipatria indicates he had suffered from chronic lower back pain since 2017, for which he was prescribed Trileptal.[8]  *Id.,* at ¶ 9.  Williams first saw Plaintiff in January 2020 at which time he examined Plaintiff and continued his prescription for Trileptal.  *Id.,* at ¶ 10.  Williams elected not to prescribe opioids or other habit-forming medications due to Plaintiff's history of opioid abuse. *Id.,* at ¶¶10, 11.  Williams continued to treat Plaintiff regularly, and adjusted Plaintiff's Trileptal dose in response to complaints by Plaintiff that he continued to suffer from back pain. *Id.,* at ¶¶ 10, 12, 14, 15.

On September 29, 2020, in response to Plaintiff's complaint of difficulty walking due to back pain, Williams ordered a cane for Plaintiff and requested a physical therapy consult. *Id.,* at ¶ 17.  In November 2020, Plaintiff was examined by a physical therapist, who determined physical therapy would not be beneficial and instead requested a neurosurgery consultation for Plaintiff, for which Williams placed an order and requested approval. *Id.,* at ¶¶ 18, 19.  In December 2020,[9] after a complete physical examination, Williams ordered an MRI of Plaintiff's lower back, the results of which were unremarkable. *Id.,* at ¶¶ 20, 23.

---

[7]     Williams authenticated as true and correct the copies of Plaintiff's medical records referenced in, and attached to, his declaration. *See generally* Williams Decl.

[8]     Trileptal is an anticonvulsant that may be prescribed to treat pain. *See* Declaration of Paul E. Kaloostian, M.D. in Support of Defendants' Motion for Summary Judgment ("Kaloostian Decl."), Dkt. No. 61-7, at ¶ 8 n.1.

[9]     Williams' Declaration refers to a visit on December 17, 2021, but also refers to his "December 17, 2020 note."  Williams Decl., ¶ 20 The medical record referenced in this paragraph is dated December 17, 2020, *see* Dkt. No. 61-6 at 31, and the Court notes that Plaintiff was not at Calipatria in December 2021.

Pursuant to Williams' consultation request, Plaintiff was seen by a neurosurgeon, Dr. Kevin Yoo, on March 4, 2021 and again on July 1, 2021. *Id.*, at ¶¶ 22, 27. Plaintiff's medical records indicate Yoo offered Plaintiff the options of treating his back pain "conservatively" or with a spinal fusion surgery, and Plaintiff opted for conservative treatment. *Id.*, at ¶ 27. Throughout this period, Williams continued to treat Plaintiff, including by continuing to prescribe Trileptal. *Id.*, at ¶¶ 24, 28. Williams had no further involvement in Plaintiff's care after Plaintiff transferred to Lancaster. *Id.*, at ¶ 29.

Williams avers he had no subjective "desire to see Plaintiff in any pain," but instead "did [his] best to alleviate [Plaintiff's] pain" in accordance with his training and professional judgment. *Id.*, at ¶¶ 30, 31, 32. Williams declares that before Plaintiff filed his Form 602, Williams was unaware Plaintiff was unhappy with his medication as Plaintiff had, up to that point, reported to Williams that Trileptal was effective. *Id.*, at ¶ 16. Williams further states Plaintiff reported improvement in his pain levels and agreed with Williams' treatment plan on several occasions. *Id.*, at ¶¶ 10, 12, 14, 15, 20, 24.

### b. Estock

At the times relevant to this lawsuit, Estock was the Chief Physician & Surgeon for Calipatria. Declaration of E. Estock, M.D., in Support of Defendants' Motion for Summary Judgment ("Estock Decl."), Dkt. No. 61-11, at ¶ 2. In that capacity, Estock interviewed Plaintiff regarding his Form 602. *Id.*, at ¶ 3. Estock's interview was incorporated into the Institutional Level Response to Plaintiff's Form 602, which Stepke signed on Estock's behalf. *See* Dkt. No. 61-10 at 4. Estock declares the response is "accurate[]" and that she "concurred with the . . . findings that Dr. Williams addressed Plaintiff's lower back pain adequately and that he did not violate CDCR policy." Estock Decl., at ¶ 3.

### c. Stepke

At the times relevant to this lawsuit, Stepke was employed by CDCR as Calipatria's Chief Medical Executive. Declaration of B. Stepke, M.D., in Support of Defendants' Motion for Summary Judgment ("Stepke Decl."), Dkt. No. 61-12, at ¶ 2. In that capacity, he approved Williams' requests for an MRI of Plaintiff's lower back and that Plaintiff be

referred to a neurosurgeon for consultation. *Id.*, at ¶ 3. Stepke also signed the Institutional Level Response to Plaintiff's Form 602 on Estock's behalf. *Id.*, at ¶ 4; *see also* Dkt. No. 61-10 at 4. Stepke declares he "concurred with its findings that Dr. Williams addressed all issues adequately and did not violate CDCR policy." Stepke Decl., at ¶ 4.

### d. Nasir

At the time of Plaintiff's incarceration at Calipatria, Nasir served as the Chief Executive Officer of healthcare services. Nasir Decl., at ¶ 2. He authored and signed the response to Plaintiff's Form 602. *Id.*, at ¶ 3. Nasir avers that based upon his review of the medical record and discussion with Estock, he "concluded" Williams adequately addressed Plaintiff's back pain and did not violate any CDCR policy. *Id.*, at ¶ 4.

### e. Plaintiff's Testimony

Plaintiff was deposed in this matter on November 9, 2022. *See* Dkt. No. 61-4. He confirmed he has suffered from chronic back pain since at least 2017, for which Williams treated him while he was incarcerated at Calipatria. *See id.* at 9-10, 12. His back pain worsened in August 2020 for reasons unknown. *Id.* at 18. Consistent with Williams' declaration, Plaintiff testified he was seeing Yoo, the neurosurgeon, for his back pain and that Yoo had discussed treatment options with him ranging from steroid injections to spinal fusion surgery. *Id.* at 39-42. Plaintiff opted for the steroid injections because he wanted to "try all other options before [he] had to get to surgery." *Id.* at 43.

Regarding Williams' treatment, Plaintiff acknowledged that Williams ordered, and Stepke approved, an MRI of his back, but stated he believed Williams should have ordered it "when I seen him the first time." *Id.* at 14. He also stated he "would have been happy," and would not have filed the Form 602 or the instant lawsuit, had Williams placed the neurosurgery consultation request earlier, but he pursued the healthcare grievance because he "felt that [he] [wasn't] getting any kind of treatment that would address the problem." *Id.* at 20-22; *see also id.* at 33 ("I wouldn't have filed any of this, if they would – from the beginning, if they . . . [told me] 'I'll recommend an MRI. I'll submit it to my bosses and see if it gets approved. . . . Then we're going to proceed from there.'"). Plaintiff questioned

whether his "injury would have been preventable" if he "would have got in front of a specialist" at the "beginning," although he admitted he did not know. *Id.* at 39.

Plaintiff testified that after his interview with Estock he believed "they were going to put together a plan for my pain" but "there was no plan . . . [a]nd then my 602s [were] just denied." *Id.* at 25. He had no further interaction with Estock, and never spoke to Stepke or Nasir. *Id.* at 26, 28. Plaintiff speculated that Defendants' treatment decisions were motivated by a desire to save money but did not have any reason to believe that any Defendants wanted to see him in pain or would profit from his suffering. *Id.* at 26, 28, 44.

### f. Expert Testimony

Kaloostian, a board-certified neurosurgeon and Defendants' retained medical expert, reviewed Plaintiff's medical records for the period during which he was incarcerated at Calipatria. Kaloostian Decl., at ¶ 5. Based on his review of the records, and his education, experience, and training, Kaloostian concluded Williams' care and treatment of Plaintiff was within the standard of care. *Id.*, at ¶¶ 5, 7, 20, 21. In Kaloostian's expert opinion, Williams treated Plaintiff appropriately by employing a conservative exhaustion strategy, ruling out alternative causes of Plaintiff's pain, and referring Plaintiff to specialists. *Id.*, at ¶¶ 7, 20-22. Kaloostian also did not believe that there was any unreasonable delay in Plaintiff's treatment, stating "the timing of treatment and referral to specialists was consistent with reasonable time frames for treatment of conditions of this type." *Id.*, at ¶ 22. In Kaloostian's expert opinion, Plaintiff's complaints against Williams "amount[] to nothing more than an unreasonable expectation and a difference of opinion between [Plaintiff] and [Williams]." *Id.*, at ¶ 23. Speaking generally about the other Defendants, Kaloostian opined they also "acted within the standard of care" with respect to their involvement in Plaintiff's care. *Id.*, at ¶ 5.

### 3. Findings and Recommendation

Based on the record before it, the Court finds summary judgment in favor of all Defendants on Plaintiff's Eighth Amendment claims is warranted. Defendants do not appear to dispute that Plaintiff's lower back pain is a serious medical need, and the Court

21-cv-944-WQH-DDL

finds that it is. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (noting that the "existence of chronic and substantial pain" is a serious medical need).

Proceeding to the second prong of the deliberate indifference test, however, the Court finds that Defendants' moving papers sufficiently demonstrate Williams did not "deny, delay or intentionally interfere with medical treatment" of Plaintiff's back pain. *Hallett*, 296 F.3d at 744. Rather, the evidence described above demonstrates Williams consistently, reasonably, and promptly responded to Plaintiff's complaints of pain. *Accord Toguchi*, 391 F.3d at 1061 (affirming summary judgment where defendant "was consistently responsive to [plaintiff's] medical needs").

Although it appears from Plaintiff's allegations that he desired different treatments and medications – among them a referral to a chiropractor, "C.B.D. oil," and marijuana, *see* Dkt. No. 29 at 4 – it is well settled in this Circuit that "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or.*, *State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981); *see also Toguchi*, 391 F.3d at 1058 (finding prisoner-plaintiff did not have the right to demand specific medications and treatments). There is no evidence before the Court that Williams' "chosen course of treatment was medically unacceptable under the circumstances" (*id*.) – to the contrary, Defendants' standard of care expert stated Williams' "plan of care was consistent with adequate or above adequate medical care." Kaloostian Decl., at ¶ 21. Likewise, there is no evidence Williams elected to treat Plaintiff as he did "in conscious disregard of an excessive risk to [Plaintiff's] health," *Toguchi*, 391 F.3d at 1058, and Williams denies any such subjective intent to see Plaintiff suffer. *See* Williams Decl., ¶¶ 30, 32. For these reasons, the Court finds Defendants' moving papers do not reveal a genuine issue of fact for trial, and that the "record taken as a whole could not lead a rational trier of fact to find for [Plaintiff]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff's Eighth Amendment claims against Nasir, Estock and Stepke are derivative of his claim against Williams. Because Williams' treatment of Plaintiff did not

violate the Eighth Amendment, the other Defendants' concurrence in that treatment also did not. Plaintiff alleges, in essence, that Nasir, Stepke and Estock each should have commandeered his treatment from Williams and chosen a different course for managing his pain. *See generally* Dkt. No. 29 at 5-7. The Court is skeptical any of these Defendants were in a position to do so given their roles at the institution; indeed, Plaintiff admitted at deposition that they "never told [him] they were [his] doctors." Dkt. No. 61-4 at 27. Regardless, Defendants' failure to provide Plaintiff with alternative medications or interventions he desired or believed would be beneficial does not rise to the level of a constitutional violation in the absence of evidence that his prescribed treatment plan was medically unacceptable. There is no such evidence before the Court. *See* Kaloostian Decl., at ¶ 5 (opining that "the Defendants . . . acted within the standard of care in their treatment of Plaintiff"). Nor is there any evidence Nasir, Stepke and Estock acted in conscious disregard of, or indifference to, his pain. *See Jett*, 439 F.3d at 1096. The Court finds Defendants' moving papers do not reveal a genuine dispute of material fact but instead establish Nasir's, Estock's and Stepke's entitlement to summary judgment, because a rational trier of fact could not find in Plaintiff's favor on this record.

Accordingly, the undersigned **RECOMMENDS** the District Court **GRANT** the Motion and enter judgment in Defendants' favor as to Plaintiff's Eighth Amendment claims against them. Because the Court finds Defendants are entitled to summary judgment on Defendants' Eighth Amendment claims, it declines to reach the issue of qualified immunity.

### D. <u>State Law Tort Claims</u>

In the SAC, Plaintiff "moves th[e] Court to grant motion to have supplemental jurisdiction [pursuant to] 18 U.S.C. § 1367 over Plaintiff's state law tort claims." Dkt. No. 29 at 1. However, no such claims are identified in the SAC. *See generally id.* He testified at deposition that he "kind of wanted to just eliminate [them], but I would have had to do another amended complaint[,] [s]o I just left [the SAC] like that." Dkt. No. 61-4 at 45; *see also id.* ("Q: So you don't really have any state law tort claims; is that right? A: Yeah.").

Defendants assert that Plaintiff's claim for "state tort violations" is improperly pled and suggests the Court enter judgment on Plaintiff's federal constitutional claims "without addressing the state tort claims." Dkt. No. 61 at 23-24.  Alternatively, Defendants request that the Court decline to exercise jurisdiction over Plaintiff's "unclear . . . claims regarding 'state torts.'" *Id*. at 24.

Because none of Plaintiff's federal claims survived summary judgment, the Court finds the latter is the better course.  "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  Even assuming Plaintiff's amorphous tort claims are sufficiently interrelated with his federal causes of action, however, once original jurisdiction ceases to exist, the Court's exercise of supplemental jurisdiction is discretionary.  *See id.*, § 1367(c)(3);  *Acri v. Varian Assoc.*, *Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (noting that "a federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)").  As a rule, "[i]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  The undersigned accordingly **RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's "state law tort claims" and **DISMISS** any such claims.

## RECOMMENDATION AND ORDER

Pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1, the undersigned Magistrate Judge submits this Report and Recommendation to United States District Judge William Q. Hayes.  For the reasons stated above and on the record before it, the Court finds Defendants are entitled to summary judgment as to Plaintiff's claims under the Eighth and Fourteenth Amendments.  The Court further finds, for the reasons stated above, that the District Court should decline to exercise jurisdiction over, and consequently should dismiss, Plaintiff's "state law tort claims."

/ / /

Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the District Court enter an order: (1) adopting this Report and Recommendation in its entirety; (2) granting Defendants' motion for summary judgment [Dkt. No. 61]; (3) entering judgment in favor of all Defendants on Plaintiff's claims arising under 28 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights; and (3) dismissing Plaintiff's state law claims, to the extent he has stated any.

**IT IS HEREBY ORDERED** that no later than **_August 17, 2023_**, any party to this action may file written objections to this Report and Recommendation with the District Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the District Court and served on all parties no later than **_August 31, 2023_**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 17, 2023

_____

Hon. David D. Leshner
United States Magistrate Judge